MARSHALL B. SHAW v. NEHEMIA CHASE ET AL.

*Equity—Accounting—General and special demurrer.*

1. On appeal from an order overruling a general and special demurrer, *held* that the statute authorizing such appeal only allows a consideration of the questions raised by the *general* demurrer. Act No. 58, Laws of 1883; *Babcock v. McJury*, 76 Mich. 316.

2. A general demurrer cannot be sustained if the bill makes out any cause whatever for equitable relief.

3. A bill by one partner setting out a substantial fraud practiced on him by his copartners in the purchase of his interest in the firm assets and business, and a right to an accounting for a fund reserved by them to abide the result of threatened litigation, states recognized grounds of equitable jurisdiction, and a general demurrer is properly overruled.

Appeal from Kalamazoo. (Buck, J.) Argued June 18, 1889. Decided November 8, 1889

Bill to set aside a partnership settlement, and for an accounting. Defendants appeal from order overruling demurrer. Affirmed. The facts are stated in the opinion.

*O. T. Tuthill* and *Howard & Roos*, for complainant, contended:

1. One who complains of fraud need only set forth in his bill the substance of the transaction, and the result. Evidence that the mode of consummating the fraud varies in some respects in the manner charged is no reason for denying relief; citing *Turck v. Soule*, 55 Mich. 128; *Merrill v. Allen*, 38 Id. 487; *Wells v. Hydraulic Co.*, 30 Conn. 316; Story, Eq. Pl. §§ 28, 252, and cases cited.

*Edwards & Stewart* (*Osborn & Mills*, of counsel), for defendants, contended:

1. A bill for relief, on the ground of fraud, should point out the particular acts of fraud; and a bill to open a settled account

should point out the specific errors complained of; citing Story, Eq. Pl. § 251; *Munday v. Knight*, 3 Hare, 497; *Gage v. Parmelee*, 87 Ill. 329; *Tong v. Marvin*, 15 Mich. 60.

CAMPBELL, J.  This case was decided below on demurrer to the bill, which was overruled, and defendants appealed.  Although other grounds were taken, the statute only allows us to consider, in such a case, the general demurrer; and according to the rules of practice a general demurrer cannot be sustained if the bill makes out any cause whatever for equitable relief.

This bill sets out, among other things, that complainant was formerly partner with defendants in the business of dealing in certain kinds of agricultural implements, and in the fall of 1887 sold out to them his interest in all but $24,000, which was laid aside to abide the result of some existing or threatened litigation; that he was not personally familiar with the condition of the business, and accepted the $16,000 as the amount represented to him by his associates as the sum to which his interest amounted.

The bill sets up that he was in this deceived and defrauded, and that his interest was really a very large sum beyond what they represented.  He also alleges and claims that the $24,000 is not required to meet the purposes for which it was set aside, and that he should have his one-fourth of that sum, or so much as remains of it, restored to him.

This bill sets out a substantial fraud in the sale, and a right to an accounting for the fund reserved.  Both of these are recognized grounds of equitable jurisdiction, and they involve here the additional element of a fiduciary relation, which is also proper for equitable treatment.

This being so, it is not material, on this appeal, to look into any of the other special grounds of demurrer.

The court below has decided them against defendants, and ordered them to answer, and that order we cannot, at this stage, interfere with.

The order overruling the demurrer must be affirmed, and the time to answer enlarged to 60 days from this decree of affirmance.

CHAMPLIN, MORSE, and LONG, JJ., concurred.

SHERWOOD, C. J., (dissenting). This case is before us on bill and demurrer, both general and special. The demurrer was overruled by the circuit judge, and defendants took the appeal, which is under the provisions of Act No. 58, Laws of 1883, p. 47. This act provides that—

"Any complainant or defendant who may think himself aggrieved by the order overruling a general demurrer * * * may appeal therefrom to the Supreme Court."

The case was heard before Hon. George M. Buck, circuit judge, at the Kalamazoo circuit, and the order entered overruling the demurrer is in the following language:

"The demurrer of said defendants to the bill of complaint of said complainant having been brought on for argument before said court, and after hearing Messrs. O. T. Tuthill and Howard & Roos, solictors for complainant, in opposition thereto, and Messrs. Edwards & Stewart, solicitors for defendants, and Messrs. Osborn & Mills, of counsel for defendants, in support of said demurrer, and after due consideration of the same, it is ordered by the court that the same be and is hereby overruled, with costs to be taxed."

The point is made by counsel for the appellee that, the demurrer being both general and special, the order overruling it was not appealable under the statute, and this raises the first question presented for our consideration. The counsel for appellee rely upon *Turck v. Soule*, 55 Mich. 128 (20 N. W. Rep. 822), as decisive of the ques-

tion in their favor. It is true, in that case the demurrer
was both general and special, but there are points made
in this case, and urged with much force, which were not
presented on the hearing in *Turck v. Soule.* The form
of the order overruling the demurrer is the same in both
cases, but our attention in that case was not then par-
ticularly called to that subject. Indeed, nothing was
said challenging its consideration. In this case it is
claimed to be of vital importance in determining the
point now being considered.

A general demurrer is one going to the merits of the
case intended to be made by the bill, and when no par-
ticular cause is assigned except the formulary required by
the practice or rules of the court that there is no equity
in the bill, and is always proper where the bill is defect-
ive in substance. Story, Eq. Pl. § 455. And if such
demurrer is overruled, the order entered is a simple one
stating briefly the fact, and is substantially in the form
used in the present case, and it excludes any presumption
that the court passed upon the special formal defects
raised, irrespective of the equity contained in the bill.

A special demurrer is usually interposed to test the suffi-
ciency of the bill in point of form, in which case it is
indispensable that the particular objection to the bill,
and the defects therein, shall be pointed out in the
demurrer; and when the demurrer interposed is only
special, the same order may be made in overruling it as
if the demurrer was general. But where the demurrer is
both general and special, the order made, it is insisted by
counsel for defendants, should be different. It is insisted it
should show to what extent the demurrer has been passed
upon by the court, because if the action of the court
only related to the general demurrer, either party would
have the right, under the statute, to appeal therefrom,
but if it extended to both then no appeal can be taken.

And it is further insisted by the defendants' counsel in this case that, the order entered being the proper one in overruling the general demurrer, and no notice having been taken therein of the points made upon the special demurrer, and it nowhere else in the record appearing that they were passed upon by the court, it should be held that the decision was upon the general demurrer only, and that, the defendants' right to appeal depending upon the action of the court, and not upon its omission to act, the right to appeal remains; that no other ruling upon the point raised can be made and the rights of the parties be preserved.

I think the views of counsel are correct. There can be no question, I apprehend, but that the demurrer in this case is both general and special, and I can see no valid objection to the demurrer being made in this form if the bill shall be deemed objectionable in both forms. If the general demurrer for want of equity includes all the causes especially assigned, the overruling of such demurrer would be still appealable, because the chief and primary objection is, in all such cases, that the bill is without equity, and the statute will apply. It still remains to be seen whether the bill can be sustained under the general demurrer pleaded. In it, under the order made, the assignment of special causes can have no effect except to limit the field of investigation, as when such assignment is made it is but fair to presume no other causes exist than those stated and relied upon.

The bill in this case is filed to obtain a dissolution of a copartnership. It alleges fraud practiced upon him by defendants, who were his copartners, in a settlement he made with them, upon which he sold to them his interest in the firm and its business, and prays that such settlement and sale, because of such fraud, may be set aside, and that an accounting may be had, and that what-

ever may be found due to him on such accounting may be decreed to be paid to him by his copartners, the defendants, and for an injunction.

It states in substance that in January, 1881, he became a member of the firm of Chase, Taylor & Co., which was composed of Chase, Taylor, Babcock, and Gilkey, by buying out Babcock's interest therein; that on March 11, 1882, the firm was dissolved, and was reorganized, and Frank J. Henry was taken in in the place of Gilkey, and the firm continued together until late in the year 1887, having its office in Kalamazoo; that the business carried on by the firm was manufacturing and selling spring-tooth harrows and cultivators and such other articles as might be subsequently agreed upon to manufacture and sell; that during this same period this company organized another firm, under the name of Chase, Henry & Co., which was auxiliary to the other, in conducting its varied business, and that after complainant retired from said firms of Chase, Taylor & Co. and Chase, Henry & Co. the remaining members formed a new firm, under the name of F. J. Henry & Co., and being really the same as Chase, Henry & Co.; that at the time the first of said firms was formed complainant was in company with Chase, making and selling fanning-mills, and during the continuance of the firm of Chase, Taylor & Co. complainant was out of the State most of the time, engaged in said fanning-mill business in California; that the firm of Chase, Taylor & Co. carried on its business largely, and sold its goods in different states, and accumulated money, and notes and obligations due it, as the complainant was informed by his partners.

That, upon complainant's returning to Kalamazoo in 1887, Chase offered to sell his interest in the firms in which complainant was a member, and complainant was willing to buy if the other members would do so; but

they were unwilling to purchase; that complainant then proposed to sell his interest in the firm to the other members, and his proposition was accepted, and the sale was made for the sum of about $16,000, upon the representation of the other members as to its condition, and upon which he relied, and upon their dealing fairly and justly with him; and that thereupon he retired from the firms and their business, but no actual dissolution was ever made of either of the firms, nor has any full statement of their affairs and business ever been made to the complainant; that the acceptance and payment of the $16,000 was on an estimate made by the other members; that the partnership books and accounts are still in existence and in possession of the other members, and now, as complainant believes, in the possession of Chase, Henry & Co.; that the partnership business of the firms, so far as complainant is concerned, and the assets of the several firms of which he was a member, are held by the other members of said firms, and that complainant is anxious to close up and have adjusted the copartnership business; and that he has requested of Chase, who has the control and management of said firms, a final settlement, but he has refused to accede to the request

The bill further states that said firms of Chase, Taylor & Co. and Chase, Henry & Co. are largely indebted to complainant in assets, profits, and business, accruing while he was a partner, amounting to the sum of $150,000, and that they ought to come to a fair and honest settlement with him, and pay him what is honestly due him; that said firms, as complainant is informed and believes, well knew that a larger sum was due him than $16,000; that Chase is involved in other large litigations, one with complainant; that he has been sued by one Cooney for $25,000, and who is waiting to bring other suits against him for large amounts, with fair prospects of success, as

complainant believes (and complainant may also cause suits for personal damages to be brought against him for $50,000), and that he is also indebted in large amounts of money, as complainant believes, and that complainant hears and believes that notes for large amounts will be made in the name of said firms unless the defendants are all enjoined from so doing, and from what he knows of Chase he believes he will incumber his individual property, to complainant's great injury, that at the time he received the $16,000 there was about $24,000 of the firm assets deposited in the bank to the credit of Chase, as an indemnity to him against possible loss in consequence of the Reed harrow suits, so called, which had long been in progress in the court, and which sum said Chase insisted should be set apart for that purpose; and that complainant's interest therein is about $6,000, which Chase withholds contrary to his rights, and which he is entitled to have.

The fraud charged is either upon information and belief, or upon belief alone, and is in substance as follows:

1. The design of Chase in offering to sell his interest in said firm was a feint to induce complainant to sell and thus get him out of the firms. This is stated upon belief alone, and no facts are stated upon which the charge can be inferred.

2. Upon information and belief it is charged that defendants knew complainant's interest, when he sold out, was more than $16,000, and that they fraudulently concealed and deceitfully misrepresented the true state of the affairs of the firm for the purpose of getting him out of it, and cheating him out of a large part of his interest.

3. Upon information and belief the bill charges that manipulation of the keeping of the books and accounts of the firm was had which made it appear that some years the firm made less than they actually did, of which complainant knew nothing

4. When he retired from the firm he supposed the books had been honestly kept, and he relied upon them, but he is informed and believes they were not honestly

kept, and he believes the true account of profit can be proved by evidence since come to light which will show the firm largely indebted to him over the $16,000, to the amount of $50,000, and but for the fraud and deception practiced upon him he would not have taken the $16,000.

· 5. Complainant and the other members of the firm sustained damage to the amount of $150,000, because of Chase's obstinacy in refusing to settle patent suits, and compromise other claims, as will be made to appear by the proofs, as complainant believes.

The foregoing is a sufficient statement to show the character of the bill. It is very evident that the fraud alleged against the complainant's partners constitutes, and was intended to constitute, the grievances of the bill. Without these allegations it is not pretended the bill could for a moment be sustained. It is one for relief, on the ground of fraud, and in such case it is not sufficient to charge the fraud in general terms, but it should state the particular acts of fraud, and the facts from which it is inferred. And the same is true of a bill to open or set aside a settlement of an account. It is not sufficient to allege generally that it is erroneous, but the specific errors wherein it is alleged to be incorrect should be pointed out. Story, Eq. Pl. § 251; *Palmer v. Mure,* 2 Dick. 489; *Munday v. Knight,* 3 Hare, 497; *Knight v. Bampfeild,* 1 Vern. 180; *Hunter v. Daniel,* 4 Hare, 432; *Johnson v. Curtis,* 3 Brown, Ch. 266; *Taylor v. Haylin,* 2 Id. 310; *Gage v. Parmelee,* 87 Ill. 329.

It is true, one who complains of fraud need only set forth in his bill "the substance of the transaction and the result," and evidence that the mode of consummating the fraud varies in some respects from the manner charged is no reason for denying the relief, because in this respect the bill may be amended at the hearing. The substance of the transaction, however, must always be stated, and which are the acts constituting the fraud,

and the facts from which the court is asked to infer it. The evidence of these facts need not be stated, but the facts themselves are essential, and especially is this the case when the fraud charged is upon information and belief of the party alleging it.

The facts only which are relevant and well pleaded are admitted by a demurrer. It does not admit conclusions of law, when stated, nor inferences drawn by the pleader from the facts stated. Story, Eq. Pl. §§ 452, 453; Coop. Eq. Pl. 111; Mitf. Eq. Pl. 211, 212. And we may say, further, a demurrer only admits matters positively alleged in the bill, and "not every fanciful pretense suggested," nor loose and vague statements. Story, Eq. Pl. § 250; *Frietas v. Dos Santos*, 1 Younge & J. 574.

The grounds of demurrer stated specially are those relied upon as supporting the general demurrer. With these general rules in view these several grounds of demurrer will now be considered. They are:

"1. That complainant, in and by his said bill, alleges no facts which in law constitute misrepresentation or fraud, or from which any legal inference thereof can be drawn, on the part of defendants towards him, entitling him to the relief prayed in and by said bill.

"2. The complainant, in and by his said bill, only imputes fraud in loose and indefinite terms, and does not charge it specifically.

"3. The complainant, in and by his said bill, in its allegations of fraud and deception by defendants in the keeping of the books of account of the partnership business, does not allege what the items or entries of the accounts are, alleged as fraudulent, or in what respect they are fraudulent.

"4. The complainant, in and by his said bill of complaint, alleging fraudulent misstatements and concealments by defendants regarding the copartnership business and accounts, does not state what were such misstatements and concealments, *i. e.*, what was and wherein misstated, and what was concealed.

"5. The complainant, in and by his said bill of com-

plaint, does not allege specific acts of defendants as fraudulent, and he states no specific facts from which this imputed fraud of defendants is a legal inference.

" 6. The complainant, in and by his said bill of complaint, wherein he claims that the settlement and sale of his interest in the firms of Chase, Taylor & Co. and Chase, Henry & Co. to defendants should be avoided on the ground of the fraud of the defendants, does not allege that he has rescinded, or offered to rescind, such settlement and sale, nor allege that he is ready and willing to put defendants *in statu quo*.

" 7. That it appears by and from said bill of complaint that the alleged $24,000 of assets of the firm of Chase, Taylor & Co., deposited in bank as an indemnity to defendant Chase, for which complainant prays an account, was a trust fund set aside to meet and pay liabilities that might be adjudged and decreed against said firm, and litigating expenses in suits pending and to be commenced against said firm; and that complainant's interest in said fund is contingent upon the suits pending and prospective being at an end, and the trust executed, and a residue remaining; and complainant, in and by his said bill, does not allege that said suits were ended, the trust executed, leaving a residue of such fund, etc., remaining.

" 8. That the material matters stated and charged in said complainant's bill are not stated as facts upon his knowledge, but upon his information and belief, and are so stated in a loose, indefinite, and uncertain manner, and do not state the sources of his information and belief, nor the facts upon which his information and belief are founded."

A careful reading of complainant's bill, I think, fully sustains each of these eight grounds of objections thereto. Several paragraphs of the bill are ingeniously drawn, as if the pleader desired to obscure the facts which ought to exist, if the conclusions or inferences stated in place thereof are correct. Such pleading clearly falls within the mischief contemplated by the rules above stated, and which they were intended to obviate. Other statements of fraud are loosely made and vaguely charged, also, in violation of such rules upon that subject.

Defendants' ninth ground of demurrer is as follows:

"That said bill of complaint is multifarious, in that it is exhibited against the firms of Chase, Taylor & Co. and Chase, Henry & Co. and F. J. Henry & Co., defendants, and Frederick A. Taylor, Frank J. Henry, and Nehemiah Chase, as defendants, the said bill being exhibited against the said Nehemiah Chase, individually, as defendant, for the accounting for a trust fund of which he is trustee, and which is for a distinct matter and cause from the matters for which said other defendants are· asked to account, and in which the other defendants are not in any manner interested."

I have no doubt, upon the position taken by the counsel for defendants, upon the ninth ground of demurrer being correct, although it must be conceded that there is no positive, inflexible rule as to what in a court of equity constitutes multifariousness which is fatal to the suit. And courts have always felt it their duty to exercise a sound discretion in determining whether the subject-matters of a suit are properly joined or not, and—

"All that can be done in each particular case as it arises is to consider whether it comes nearer to the class of decisions, where the objection is held to be fatal, or to the other class, where it is held not to be fatal." Story, Eq. Pl. § 539; *Campbell v. Mackay*, 1 Mylne & C. 621; *Oliver v. Piatt*, 3 How. 412.

There are cases, however, in which, all the authorities agree, the objection, when properly taken, should prevail, and the case not be allowed to go further in its present condition, and it is equally well settled that demurrer, which is always special in such cases, is the proper mode of procedure to obtain relief; but courts will not be technical to favor this defense when equity between the parties can be attained, and a joinder of parties or of subject-matters, or misjoinder of the same, will be overlooked where neither can do harm. Jen. Ch. Pr. 26; *Hammond v. Bank*, Walk. Ch. 214; *Wales v. Newbould*, 9

Mich. 81; *Reed v. Wessel*, 7 Id. 139; *Payne v. Avery*, 21 Id. 524.

This point, however, need not be further considered, as under the views above expressed, upon the nature and scope of the order appealed from, it must be held the circuit judge did not pass upon anything necessarily included under the special demurrer, and it is his action alone that is under review.

I think the order of the circuit judge should be reversed.