## THE TOWNSHIP OF CHURCHILL v. THE TOWNSHIP OF CUMMINGS.

*Demurrer—Accounting between townships—Official laches.*

Demurrer to a bill in equity does not admit the truth of matters that are not relevant or well-pleaded, nor the correctness of legal inferences, nor unreasonable deductions of facts, nor unreasonable or inequitable meanings or implications.

Where accounts between two townships are adjusted by their respective boards, one of the townships, in filing a bill to set aside the settlement, cannot distinguish itself from its board for the purpose of excusing laches, nor can it claim relief on the ground that its own board was inferior in ability or in knowledge of facts material to the settlement.

Where unsettled accounts between two townships are adjusted by their boards at a joint meeting, one of the townships cannot afterward maintain a bill against the other to set aside the settlement on the ground that its own board was inferior to the other in ability, experience or knowledge, or that it was misled by the other as to the true financial condition of its own township. And the complaining township cannot distinguish between itself and its board for the purpose of escaping the consequence of the latter's negligence.

Every township board is presumed competent to attend to the business it has to do, and in that respect to be equal in ability to any other board with which it deals.

The misrepresentation to a public board of facts which they can ascertain and are bound to know as pertaining to their own duties, but as to which they neglect to inform themselves, does not furnish any substantial ground for remedial equity.

A court cannot enter upon an original accounting on a bill which is so deficient in equities as to leave an existing settlement in force.

Appeal from Ogemaw. (Green, J.) June 22.—Oct. 10.

BILL to set aside a settlement and for an accounting. Complainant appeals. Dismissal affirmed.

*A. V. Thomas* and *Hatch & Cooley* for complainant.

*A. McDonald* for defendant.

GRAVES, C. J. This appeal was taken from a decree which dismissed the bill on demurrer.

March 12, 1878, the board of supervisors separated part of the territory of the township of Churchill and erected the township of Cummings. Shortly after the new township was organized, and in April, 1878, the boards of both townships convened pursuant to the statute, (Comp. L., ch. 13,) to apportion the assets and liabilities between the parent township and the new one, according to the rule laid down in said statute. The joint meeting elaborated an adjustment, to which all assented; and the agreement being written in duplicate and signed by each member, the boards adjourned and the meeting was dissolved.

About two years and a half later it was alleged on the part of the township of Churchill that errors to a large amount had been committed in the settlement against that township, and another meeting was demanded to effect their correction and effectuate a true adjustment. An attempt to secure such a meeting, in November, 1880, failed because Cummings refused to join. But in the summer of 1881 the two boards again came together and consulted. The state of things, however, was not changed. The township board of Cummings refused to take any new or further steps, and retired from the meeting.

Among the items mentioned in the agreement was a demand for $249.55 by school-district No. 2 against the township of Churchill, and although the township of Cummings assumed this obligation, it has failed to pay it, and

the district has commenced an action at law against the township of Churchill to enforce it, which is still pending.

In the fall of 1881 the latter township filed this bill to set aside the settlement and have an accounting in chancery. The reasons assigned for setting aside the existing settlement are fraud and mistake, and an original accounting is claimed in chancery under the statute of 1881 (Pub. Act No. 46) and on the alleged ground that, the boards having met, the board of Cummings refused to arrive at a settlement, and likewise because that board refuses to engage in a further meeting.

The record presents two general questions,—one of jurisdiction, and the other whether the bill on its own theory contains any case for relief. The question of jurisdiction covers two grounds : *First*, whether the general authority of the circuit court in chancery in matters of mistake and fraud extends to settlements transacted by township boards under ch. 13 ; *second*, whether the conditions of fact are the same as those on which the statute of 1881 makes the right of equitable intervention depend for the purpose of an accounting in the court of chancery. This subject of jurisdiction involves several points of considerable difficulty, and, as the case may be disposed of on the other ground, they will not be examined here.

The other general question relates to the case made by the bill, and it takes for granted that the circuit court in chancery possessed the power to set aside the settlement for fraud or mistake, and the point is whether what is stated concerning fraud and mistake exhibits a case of either on which a court of chancery can found any relief. As the particulars adduced to warrant the accusation of fraud are not discriminated from those intended to present a case of mistake, but the same facts are promiscuously employed for the most part to make out both, there will be no attempt to classify the facts with reference to the distinctions between these subjects of equitable cognizance.

1. The complaining township begins by dwelling on the comparative ability, experience and knowledge of the

members of the respective boards in regard to the management of township affairs and in regard to such settlements, and then represents the members of its own board as greatly inferior in these respects, and in the same connection alleges that the supervisor on defendant's board had been supervisor, for the three years next preceding, of complainant's board, and was well informed as to the financial standing and credit of complainant, and knew what its debts and liabilities were.

2. Having premised thus much, the bill goes on to charge that the members of defendant's board, intending to defraud complainant, falsely represented that the list of complainant's debts quoted in the bill was a correct statement of complainant's outstanding debts, obligations and liabilities; that complainant's net credits were $4301.51; that according to the roll of 1877 the taxable property of complainant was equal to that of defendant; that these representations were false, to the knowledge of defendant's board, but were believed and relied on by the members of complainant's board. For the purpose of refutation and explanation these allegations are followed by amounts said to be correct, and by items of debts and liabilities of complainant which are claimed to have been overlooked, and by certain other sums alleged to have been charged back to complainant by the county treasurer and Auditor General since the settlement.

To accurately estimate the statements of the bill it is requisite to bear in mind that the demurrer does not admit the truth of matters which are not relevant or well pleaded, nor the correctness of legal inferences, nor any deductions of fact which are not reasonable, nor any meanings or implications which are opposed to the principles of reasoning or the rules of equity.

The case, in its leading features, has no example; and among its striking peculiarities is the fact that the complaining township disparages the qualifications and vigilance of its own agents, and assumes that their comparative inferiority and their want of assiduity are sufficient to generate an equity in its favor to have the settlement set aside in chancery.

This theory is not valid. The members of these boards were selected by their respective townships, and the law required them to meet for the very purpose of effecting a settlement between the townships. It regarded the boards as equals, and considered each as fully able and qualified to perform the duty enjoined in a fitting manner. There is no principle on which the court may speculate on the varying degrees of actual capability of the members, or inquire into and pronounce upon their administrative or diplomatic strength for the exigencies of the occasion, and proceed to elevate the board of one township above that of the other, and apportion duty and responsibility accordingly; and the complainant can found no equity on any supposed distinction between the two boards in respect to actual intelligence and fitness for the duties of the occasion. Were the position alluded to maintainable, it would follow that the question would be the subject of an issue of fact to be decided on evidence, and the court of chancery would be occupied in the wild and absurd attempt to decide for itself upon the comparative intelligence and fitness of these township officers.

Where the law commissions these officers to act at such meetings, it requires no more of one board than of the other, and demands of neither anything beyond such ability as the township may secure, and as every township board is presumed to possess. This portion of the bill is therefore irrelevant and adds nothing to the case.

The matters which remain to support the assumed equity are in substance that the members of defendant's board in part misrepresented to the complainant's board, and in part concealed from them, the true financial condition of complainant in regard to its assets, debts, liabilities and taxable property.

Does this constitute a charge of fraud or mistake which a court of equity can regard? The question refers to the merits of the statements in the bill, and not to formalities. The means of information in relation to all these topics were in public records which were perfectly accessible to the members of complainant's board, and it was not only in the line of their ordinary duty as the administrative council of

the township, but was especially incumbent on them as members of the joint meeting, to consult these legitimate sources of knowledge and make themselves fully acquainted with all the facts.

It is material to mark the exact nature of the charge. The allegation is not that the defendant's agents misrepresented or concealed anything that the members of complainant's board were not bound to ascertain from the records; not that they misrepresented or concealed anything in regard to the condition of their *own* township, nor misrepresented or concealed anything which the members of complainant's board would not be presumed to know or be able by reasonable diligence to ascertain. The charge really comes to this : that the members of complainant's board were deceived in regard to their own concerns,—in respect to the affairs of their own township, and over which they were the exclusive guardians; that they were overreached, because, and only because, they neglected to see what the law required them to see, and what by the slightest attention to their own matters must have been obvious. Where knowledge is thus made a duty and the appointed means are conspicuously at hand, if the risk of being misled is preferred to any legitimate effort to get such information as would prevent it, the case is hardly one which commends itself to remedial equity. Where difficulties are caused by preferring supineness to vigilance, the principles of the court are against giving relief to the neglectful party. Story's Eq. Jur. §§ 199, 200a; Smith's Eq. Jur. 59; *Grymes v. Sanders* 93 U. S. 55.

No avoidance of the rule can be claimed on the narrow ground that complainant and its own board were distinct. In view of the facts as we have them we cannot make such a distinction. For the purpose of this case the proceedings by complainant's board must be regarded as complainant's proceedings. A further circumstance is not unworthy of notice. The want of due attention on the part of complainant did not terminate with the joint meeting. For two and a half years after the occurrence of the glaring faults with which the settlement is now charged, they seem to

have passed without challenge, and the case offers no explanation or excuse for this tardiness and inattention.

These considerations show that the bill makes no case on which a court of equity, adhering to its own principles, could rescind the settlement executed and recorded by the joint meeting. And it will be readily conceded that no theory can be imagined on which the court could undertake an original accounting with that settlement still in force.

It follows that the decree should be affirmed with costs.

SHERWOOD and CAMPBELL, JJ. concurred. COOLEY, J. did not sit in this case.